## STATE *v.* RAY.

### (*Nashville.* January 10, 1900.)

1. EVIDENCE. *Withdrawal of incompetent.*

   As a general rule the inadvertent admission, over objection, of incompetent evidence, does not constitute reversible error if it is subsequently wholly withdrawn, and the jury instructed in plain and unmistakable terms to disregard it, and the Court cannot see that injury or prejudice has resulted to the complaining party. (*Post, pp. 37, 38.*)

   Cases cited: Railroad *v.* Eames, 8 Bax., 221; Heatherly *v.* Bridges, 1 Heis., 220.

2. SAME. *Same.*

   But the inadvertent admission, over objection, of incompetent evidence in a capital case constitutes reversible error, although the Court has undertaken subsequently to withdraw it, where the evidence was of a character especially calculated to prejudice the defendant—*e. g.*, evidence of the political faith and affiliations of a negro defendant—and was withdrawn in such manner as to impress the jury that they might still consider it for the purpose of impeaching the defendant's character. (*Post, pp. 34–39.*)

---

#### FROM GILES.

---

Appeal in error from Circuit Court of Giles County. SAM HOLDING, J.

ATTORNEY-GENERAL PICKLE for State.

BEN CHILDERS and J. FRANK STEELE for Ray.

WILKES, J.   Defendant was indicted for murder.
The jury returned a verdict of murder in the
first degree, with great mitigating circumstances.
The trial Judge pronounced sentence of death,
and defendant has appealed.   He has been repre-
sented in this Court, and in the Court below by
able counsel, and an excellent presentation of his
case has been made.   The record is quite vol-
uminous, and the details of the killing, which
occurred in a public place, and in the presence
of many witnesses, are fully shown.

It is said by counsel for defendant that the
Court erred in admitting certain testimony which
was calculated to prejudice the defendant.   It ap-
pears that Clarence Campbell was introduced by
the defense as a character witness, but testified
that he did not know the character of the de-
ceased.   On cross-examination he stated further
that he knew the defendant personally.

He was then asked by the State whether or
not there was, or had been, any political preju-
dice in that part of the county, on the part of
the negroes, on account of his (defendant's) polit-
ical affiliations with the white people (defendant
is a negro, and so was the deceased).   His counsel
objected to this question.   The District Attorney
stated to the Court that defendant had filed his
affidavit for continuance in the case, alleging that
such was the fact.   The Court permitted the ques-
tion to be asked.   The witness answered that he

had never heard of such a thing; that the witness was once committeeman of the Democratic party in that district, and he had never known of any prejudice against the defendant on account of his politics. Witness was then asked by the District Attorney if defendant was a Democrat or Republican. Defendant's counsel excepted to this question, and the Court overruled the exception and permitted witness to answer. Witness answered that he did not know as to defendant's politics, but that he (witness) had always regarded him as a Republican.

The bill of exceptions states that this evidence was afterwards withdrawn from the jury.

It is not insisted in this Court that this evidence was competent, but it is said that its introduction was for the purpose of showing that the affidavit of defendant for a continuance, that prejudice existed against him on political grounds, was false, and this it is argued may be considered as an attempt to evade a trial, and may be taken as an indication of guilt, in the same way as flight after the offense is committed may be looked to upon the question of guilt.

The trial Judge in his charge stated that this evidence was not introduced as evidence to influence the verdict, and he instructed the jury that they would not consider that matter in making up their verdict as to the guilt or innocence of the defendant.

The admission of this testimony before the jury was manifest error, and such as was calculated to, and may have, prejudiced the minds of jurors, for it is a well recognized and generally known fact that political prejudices have great weight and influence with many men. Whether. defendant is a Republican, Democrat, or Populite is immaterial upon the question of his guilt. The difficulty had no political origin or significance. It was not competent for the purpose of showing the falsity of the statement made in the affidavit for continuance. Whether that statement were false or true was not material to the matters at issue before the jury. The affidavit was not before the jury; it was a matter for the Court preliminary to the hearing. It was not offered on the trial, and would not have been competent if it had been, as it was a mere collateral matter. It was not proper that the jury should know anything of such affidavit. The statement of the witness carried with it weight, as he had been a committeeman of his district for the Democratic party, and spoke as one having knowledge, or at least opportunity for such knowledge.

The evidence should have been promptly rejected when offered, or rather it should not have been offered in the presence of the jury. After admitting it, its effect could not be eradicated by withdrawing it, and telling the jury not to regard

it on the question of guilt or innocence of defendant.

Its introduction for the purpose indicated by the District Attorney was improper, as in that view it was an attempt to impeach the veracity of the defendant by showing that an affidavit formerly made by him was false. The defendant had no opportunity to defend against such impeachment, nor to show the truth of his affidavit.

The matters that transpired on his application for a continuance were collateral, and immaterial to the issue of guilt or innocence on the trial. The trial Judge in his charge did not withdraw the testimony entirely from the jury, but stated to them merely that they should not regard it on the question of guilt or innocence, leaving them to infer, as we think, that it might be considered for other purposes. Under this language of the trial Judge the jury may have still looked to it as impeaching the veracity of the defendant.

When incompetent testimony has inadvertently been admitted, even in civil cases, the trial Judge in withdrawing it must do so in no uncertain language, but it must be done so plainly and completely as to leave no room for the jury to misunderstand or misapply his statements. *Railroad* v. *Eames,* 8 Bax., 221.

Where the introduction of alleged testimony is permitted, and the testimony afterward excluded, this Court has held that it will not constitute

reversible error, unless it is apparent that its introduction has created some prejudice or injury. Still, where life is involved, the Court will not be disposed to relax or extend the rule, and when such evidence has a tendency to prejudice the defendant. in his defense, the Court will not presume that the partial withdrawal of the evidence cured the injury inflicted by its introduction.

The language of the Court in *Heatherly* v. *Bridges,* 1 Heis., 220, is appropriate in this case. There the trial Judge had permitted the plaintiff to prove that the defendant was a Confederate soldier, and there was no objection made at the time, and this was afterwards withdrawn by the trial Judge. The Court says: "Its withdrawal. was perhaps of no avail, and it had done its mischief. We can conceive of no rule of law more important to be observed in jury trials than that the evidence should be circumscribed and confined to the issue to be tried. It means something more than a mere saving of time. It means that public justice cannot be administered in its integrity and purity if the minds of a jury are to be decoyed from the issues they are trying, and confounded and confused in a mass of irrelevant matter, which cannot tend to eluci-date the issue. When once brought before a jury it has generally performed its office. In the mass of relevant and irrelevant matter it is humanly impossible, with many jurors, to eliminate the per-

State *v.* Ray.

tinent from the impertinent, the material from the immaterial, the legal from the illegal, and to divest themselves from those natural and human passions and prejudices which such testimony is often specially intended to generate."

Without passing on any other assignment made, we are of opinion this error is material and reversible in a capital case, and on account of it the judgment below is reversed, and cause remanded for a new trial. State will pay costs of appeal.